## THE PEOPLE OF THE STATE OF NEW YORK, DEFEND-ANT IN ERROR, *v.* GEORGE D. LORD, PLAINTIFF IN ERROR.

*Statute of limitations in criminal cases — how construed — chap.* 630 *of* 1873 — *not retroactive.*

A statute limiting the time within which indictments must be found, is an act of grace and favor on the part of the State which is to be liberally construed, when construction is required, in favor of the criminal.

Chapter 630 of 1873 amending the section of the Revised Statutes, requiring all indictments to be found and filed within three years after the commission of the offense, by extending the time to five years, does not apply to offenses committed prior to the passage thereof.

CERTIORARI to the Erie Oyer and Terminer to review proceedings of that court on the trial of Lord, for having, as a member of the assembly of this State, in the year 1871, received value for aiding in procuring the passage of a law by the legislature, authorizing the canal commissioners to allow to one John Hand additional compensation for work done by him under contracts with the State, in violation of the provisions of chapter 742 of the Laws of 1869, entitled an act for the more effectual suppression and punishment of bribery.

The evidence on the part of the people tended to prove that at the general election, held in the county of Monroe in November, 1870, Lord was elected a member of the assembly for said county, took the oath of office, and on the first Tuesday in January, 1871, entered on the duties of said office. In June, 1868, one John Hand, entered into a contract with the people to do a certain work on the Erie canal, for certain prices in said contract specified, and in June, 1869, he entered into two other contracts with the people to do other work on said canal. Hand performed the work, but claimed the price agreed to be paid therefor was not a fair and adequate compensation for the work done. In order to get additional compensation, it became necessary to procure the passage by the legislature of an act authorizing the canal commissioners to inquire whether the compensation, agreed to be paid for the work done by said Hand under said contracts, was an adequate one, and

if found not to be, then authorizing the commissioners to allow and pay to said Hand such additional compensation as should be just.

A bill to procure such additional compensation was introduced into the assembly while Lord was a member thereof, and passed that body and the senate, and became a law on the 19th of April, 1871, and is chapter 585 of the Laws of that year. It gave the canal commissioners the authority to make such additional allowance to Hand as they should deem reasonable, not exceeding forty cents per yard. The commissioners made an investigation as to the propriety of allowing Hand further compensation, and additional compensation was allowed and paid. Before the passage of said last-mentioned act, and with the view to secure the aid of Lord in securing the passage thereof, an agreement was made between Lord and one Bennett, representing said Hand, that in consideration that Lord would aid in passing said bill, Bennett should pay to him (Lord) two-thirds of whatever extra compensation should be allowed Hand by the canal commissioners.

In pursuance of this agreement, and in consideration of this promise of said Bennett, said Lord did, as member of the assembly, aid in procuring the passage of said bill in violation of his duty as a member of the assembly. When the offense was committed the law required the indictment for it to be found and filed in the proper county, within three years after the commission of the offense. (3 R. S. [5th ed.], 1017, § 37.)

On the 28th of May, 1873 (chap. 630), the last-mentioned statute was amended, by extending the time for finding and filing bills of indictment for offenses, other than murder, five years.

The indictment charged that the offense was committed on the 1st of February, 1871, and it was found and filed on the 20th of September, 1875.

The defendant's counsel on the trial asked the court to direct a verdict of acquittal, on the ground that the act specifying the time within which a bill of indictment should be found and filed at the time the offense was committed, was repealed by the act of May, 1873, and that the last mentioned act, extending the time for finding a bill of indictment, could not be construed to apply to an offense committed before the passage of said amended act.

The court refused to direct a verdict of acquittal, or to discharge the prisoner, but held, that the indictment being found within five years subsequent to the commission of the offense was valid, and to this defendant's counsel duly excepted.

The jury found the defendant guilty, as charged in the indictment.

*Daniel N. Lockwood*, district attorney, and *James M. Humphrey*, for the defendant in error. An *ex post facto* law is one which makes an act punishable as a crime that was innocent when committed, or increases the punishment or changes the rules of evidence required to establish the commission of the crime. (Bishop on Statutory Crimes, § 266; *Calder* v. *Bull*, 3 Dallas, 386, 390; *Watson* v. *Mercer*, 8 Peters, 88, 110.) The statute under consideration neither creates an offense, increases its punishment nor changes the evidence required to establish its commission. It relates only to the remedial policy of the State as to the manner in which its officers may proceed to punish criminals. It declares that for certain crimes the indictment shall be presented, etc., within five years. It makes no provision as to what shall constitute the crimes or be the evidence of them, but simply relates to the remedy or modes of punishment. The acts constituting the crimes and their proof and punishment were already declared by the statute and common laws, and this act simply says the State will not present indictments therefor after five years from the commission. It relates to something to be done in the future, the steps to punish criminals thereafter to be taken. This is not, in any legal sense of the term, retrospective, and it is not necessary that it should be to authorize the indictment of persons guilty of crimes within five years previous to its passage. The crime had been committed and this act simply declares within what time it may be punished by indictment. The statute, as amended, from that date became the only law limiting the time for presenting indictments for the class of crimes of which the defendant was charged, and is without any words of qualification or limitation, general in its terms, and necessarily applies to crimes committed in the past as well as the future, unless it be held that no persons guilty of crimes belonging to that class and committed before the passage of the amendatory act could be indicted, thus by law giving

impunity by legislative pardon to all crimes of that class committed previous to that date. Nothing short of the most positive and une- quivocal language could warrant a construction fraught with such consequences. The general rule that statutes are held not to have a retrospective operation relate to civil affairs and rights of individuals, and not to the remedy and mode of punishing crimes. Yet even here it is settled by authority, beyond question, that the legislature has the power to pass retrospective laws, even to the extent of disturbing vested rights in certain cases. But there can be no such thing as vested rights as applied to the criminal law or its administration. That a criminal can have a vested right not to be punished for his crimes is an absurdity. No man can have a vested right to do wrong

*W. F. Cogswell* and *A. P. Laning*, for the plaintiff in error. The court erred in refusing to direct an acquittal on the ground that the statute of limitations had barred the prosecution. The act of 1860 being the one that was in force when the offense is alleged to have been committed, is the one that regulates the time within which an indictment must be found, and the act of 1873 has no application to such offense. This proposition divides itself into two subdivisions, the one of construction the other of power; that the act of 1873 is not, as a matter of construction, applicable to any offenses committed before its passage; that if it is, then it is *ex post facto* and void. As to the first see *Sanford* v *Bennett* (24 N. Y., 20), *Dash* v. *Van Kleeck* (7 Johns., 477), *Tillman* v. *Lansing* (4 id., 45), *Helmore* v. *Shuter et al.*, sometimes reported as *Gilmore* v. *Shuter* (4 Burr., 2560; 2 Shower, 17; 2 Mod., 310; 1 Vent, 330), *Carroll* v. *Carroll* (16 How. [U. S.], 275), *Ely* v. *Holton* (15 N. Y., 595), *People* v. *Carnal* (2 Seld., 463), *Wood* v. *Oatley* (11 Paige, 400), *Prince* v. *United States* (2 Gallison, 204), *Santford* v. *Bennett* (24 N. P., 20), *Watkins* v. *Haight* (18 Johns., 138), *Stone* v. *Flower* (41 N. Y., 566), *Boyd* v. *Barringer* (23 Miss., 269), *Garrett* v. *Beaumont* (24 id., 377), *Moore* v. *Lobbins* (26 id., 304), *Murray* v. *Gibson* (15 How. [U. S.], 421), *Calvert* v. *Lowell* (5 English [Ark.], 147), *Couch* v. *McKee* (1 id., 484), *Scarborough* v. *Dugan* (10 California, 305), *Ridgley* v. *Steamboat Reindeer* (22 Miss., 442), *Thompson* v. *Alexander* (11 Ill., 54), *Hull* v. *Miner*

(2 Root [Com.], 223), *Williamson* v. *Field* (2 Sandf. Ch., 533), *Dedin* v. *Davison* (2 Barb. Ch., 477), *Calkins* v. *Caulkins* (3 Barb., 305). If we are wrong as to the question of construction, is not the act within the prohibition of the Constitution that no State shall pass any bill of attainder or *ex post facto* law? (Art. 1, § 6; sub. 1, § 10, art. 1.) It was within the power of the legislature to limit the time within which a presentment or indictment might be made by the grand jury, because in that respect its powers were not restricted by the Constitution. And when so limited by the legislature it became a vested right to all persons who might be subjected to the laws of the State, as much as the constitutional right requiring such presentment or indictment for offenses before trial. It will hardly be claimed that if the Constitution had been changed and this provision abrogated after the commission of the offense that any proceedings for trial or punishment could be taken therefor because of the right guaranteed by the Constitution. How, then, can the time within which such proceeding by presentment or indictment can be taken, be extended after the commission of such offense, without equally violating the vested right of the accused. It was as much his constitutional right to have such presentment or indictment within three years from the time of the alleged commission of the offense, as to have such presentment or indictment before trial therefor, and his rights are as much affected by the abrogation of the one as by the extension of the other. Again, to apply the extension of time within which a presentment or indictment may be found to this case, renders the statute creating such extension obnoxious to the provision of the Constitution of the United States which prohibits the State from passing any *ex post facto* law. If it is held that the amended statute applies to offenses charged to have been committed before its passage, it is clearly *ex post facto* in its application. There is no analogy between the limitation of civil actions, and the limitation of time within which indictments must be found for alleged offenses. The former is a mere remedy to enforce a right which may be changed, extended or abrogated. The latter is a proceeding on the part of the sovereign for the punishment of an offense in such manner as best to protect the liberty of the person and shield him from undue prosecution and jeopardy. He is exempted from the expense, the annoyance and the hazard of

trial, until his case has been investigated and presented by the grand jury, by the Constitution. For the same reasons, and to enable him to meet the allegations while the facts are within the recollection of witnesses and they are accessible, the Legislature limited the time within which he was subjected to investigation to three years. It had no power to change that limit to his prejudice so as to subject him to inquiry as to his conduct prior to its enactment without violating his rights by the existing law. It increased and extended his liability to indictment to trial and to punishment, and it was therefore void if held to be applicable.

MULLIN, P. J.:

Being of the opinion that the act of 1873, extending the time within which indictments might be found from three to five years, does not apply to the case before us, we have not considered the other questions discussed by counsel on the arguments.

The general rule for the construction of statutes is, that they are to be held to apply to cases arising after their passage, and not to cases arising before, unless the intention to give them a retroactive effect is clearly manifested in the acts themselves, or is necessarily to be inferred from them. (Potter's Dwarris on Statutes, 163, and notes; *Dash* v. *Van Kleeck*, 7 Johns., 477; 1 Kent's Com., 445, and cases cited in the notes.)

A statute limiting the time within which indictments must be found, is a surrender by the State of its right to try and punish criminal offenses at its discretion, without limit as to time. It is, therefore, an act of grace and favor which is to be liberally construed, when construction is required, in favor of the criminal; and if the law in question applied to civil cases, it would be held to apply to future cases, and not to those arising before its passage.

The same construction should be given to it in a criminal case. In the case of *Murray* v. *Gibson* (15 How. [U. S.], 421), the plaintiff in 1844, recovered a judgment in an action of debt, in one of the State courts of Louisiana, against the defendant, who was at that time and subsequently, a resident of the State of Mississippi. A suit was brought upon it in the latter State, and the defendant pleaded in bar an act of the legislature of Mississippi, limiting the time to bring actions on judgments recovered in other States against citizens of Missis-

sippi, to three years, from the rendition of the judgment. The plaintiff demurred to this plea, and the judges of the Circuit disagreeing, the case was certified to the Supreme Court of the United States. That court held that the statutes did not apply to judgments recovered before its passage. DANIELS, J., who delivered the opinion of the court, says : "As a general rule for the interpretation of statutes, it may be laid down that they never should be allowed a retroactive operation where this is not required by express command, or by necessary and unavoidable implication. Without such command or implication they speak and operate upon the future only. Especially should this rule of interpretation prevail where the effect and operation of a law are designed, apart from the intrinsic merits of the rights of parties, to restrict the assertion of those rights."

The reason why a statute limiting the time for finding indictments should be liberally construed and held to apply to cases arising after its passage, and not to those arising before that time, are very clearly stated by Wharton in his work on criminal law. (Vol. 1, § 444, *a.*) He says a mistake is sometimes made in applying to statutes of limitation in criminal suits, the construction that has been given to statutes of limitation in civil suits.

The two classes of statutes, however, are essentially different. In civil suits the statute is interposed by the legislature as an impartial arbiter between two contending parties. In the construction of the statute, therefore, there is no intendment to be made in favor of either parties. Neither grants the right to the other, and there is, therefore, no question as against whom the ordinary presumptions of constructions are to be made.

But it is otherwise when a statute of limitation is granted by the State. Here the State is the grantor surrendering, by act of grace, its right to prosecute, and ordering the offense to be no longer the subject of prosecution.

The statute is not a process to be strictly and grudgingly applied, but an amity, declaring that after a certain time oblivion shall be cast over the offense, and that the offender shall be at liberty to return to his country, and that from henceforth he may cease to preserve the proofs of his innocence, for the proofs of his guilt are blotted out. Hence it is, that statutes of limitation are to be

liberally construed in favor of def' ndants, not only because such liberality of construction belongs to all acts of amity and grace, but because the very existence of the st tute, is a recognition and notification by the legislature of the fa᠎ t that time, while it gradually wears out proofs of innocence, has assigned to it fixed and positive periods in which it destroys proofs of guilt. The conviction must be reversed and the prisoner discharged.

TALCOTT, J., concurred in result.

SMITH, J., dissented.

Conviction reversed and prisoner discharged.